# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIEL ROSADO, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:04CV00758(PCD) |
| | : | |
| JOHN POTTER, POSTMASTER | : | |
| GENERAL FOR THE UNITED STATES | : | |
| POSTAL SERVICE, NATIONAL | : | |
| RURAL LETTER CARRIERS | : | |
| ASSOCIATION, and MAGELLAN | : | |
| HEALTH SERVICES, INC., | : | |
| Defendants. | : | |

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

In April, 2006, Defendant John Potter, Postmaster General for the United States Postal Service, Defendant National Rural Letter Carriers Association ("NRLCA"), and Defendant Magellan Health Services, Inc. ("Magellan"), each filed a motion for summary judgment [Doc. Nos. 104, 115, and 120]. Defendant Magellan Health Services, Inc., also filed a motion for a hearing on its motion for summary judgment [Doc. No. 124]. For the following reasons, Defendants' motions for summary judgment are **granted**, and Defendant Magellan's motion for a hearing is **denied.**

## I.     BACKGROUND

This action arises from the termination of Plaintiff Daniel Rosado's employment as a mail carrier for the United States Postal Service ("USPS"). Plaintiff alleges that he was wrongfully discharged by Defendant John Potter, Postmaster General, and that the NRLCA, the collective bargaining representative of USPS rural letter carriers failed to represent him. Plaintiff also brings state law tort claims against Defendant Magellan, a private corporation that administers the USPS's Employee Assistance Program ("EAP") under a contract with the United

States Government.

The recited facts are derived from the parties' Local Rule 56(a) statements.  Plaintiff was employed as a USPS rural carrier associate ("RCA") out of the Monroe, CT post office branch. At all times relevant to this matter, the USPS and the NRLCA were bound by a collective bargaining agreement known as the USPS-NRLCA 2000 National Agreement (the "National Agreement").  Pursuant to this agreement, the NRLCA is the exclusive bargaining representative of all postal employees in the bargaining unit, including the RCAs.  Article 16 of the National Agreement provides that, "No employee may be disciplined or discharged except for just cause such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to observe safety rules and regulations."

On September 5, 2002, Plaintiff was issued a disciplinary Letter of Warning from his supervisor, reprimanding him for failing to follow USPS policy that an employee obey all orders from superiors, unless they pose danger to the employee, and file a protest in writing if he objects to an order.  On several occasions, Mr. Rosado had griped about working conditions but did not grieve them.  On December 5, 2002, a snowy day, Mr. Rosado completed his route by 4:30 PM, which was later than usual, and returned to the Monroe Post Office.  Mr. Rosado's supervisor, concerned for a new RCA who was assigned to another route and still out delivering mail, claims to have directed Plaintiff to go back out and help the new RCA complete her route.  Plaintiff balked at doing so, claiming it was unsafe due to the snow.  In the view of his three supervisors, Plaintiff's response constituted a refusal to obey an order of his superior.  Plaintiff claims to have understood this exchange as a request for his assistance, not a direct order, although a USPS

supervisor asserts that she told Plaintiff, "This was a direct order."  (Def. Magellan's Local Rule 56(a)(1) Statement, Ex. I.)  After Plaintiff refused and left the post office to return home, another RCA went out to deliver the remaining mail.

Later that evening, Plaintiff called the USPS Employee Assistance Program ("EAP"), a support service administered by Defendant Magellan providing, among other resources, telephone consultations with counselors for employees who call in to discuss a problem. Speaking with Mark Ruck, a licensed social worker and employee of the EAP, Plaintiff described the events of the day.  He concedes that he told Mr. Ruck that he had thoughts of harming his supervisors with whom he was angry and that "I indicated that I had thoughts about hitting someone because I was upset by my employer's treatment."  (Pl.'s Local Rule 56(a)(2) statement, Ex. A at ¶ 16.)  This telephone consultation included a comment about things going so badly at the post office that they would receive mention in the newspapers.  Mr. Ruck attributes this comment to Plaintiff, who claims he had handed the phone to his brother, a former USPS employee, who made this comment.  Based on these and other statements during the consultation, Mr. Ruck believed that Plaintiff was making a serious threat of violence and intended to act on that threat.  Mr. Ruck maintains that after Plaintiff terminated the phone call, Ruck checked with his supervisor and then attempted to call Plaintiff back to establish a safety plan but could not reach him.  Plaintiff disputes that Mr. Ruck tried to call him back that evening.

Early the next morning, Mr. Ruck contacted the Monroe Post Office to report what he perceived to be Plaintiff's threat.  A Postal Inspector ordered Plaintiff and several of his supervisors to not report to work that day and investigated the matter.  After an interview with two Postal Inspectors on December 6, 2002, a psychiatric Fitness For Duty Examination on

-3-

December 12, 2002, and a Pre-Disciplinary Interview with the Supervisor of Customer Service at the Monroe Post Office on January 17, 2003, USPS sent a Notice of Removal to Plaintiff on January 23, 2003, terminating his employment.  The Notice of Removal stated that USPS was terminating Plaintiff's employment because he violated the USPS Code of Conduct by refusing to obey an order and because he violated the Connecticut District's Zero Tolerance Policy on Violence in the Workplace by making a threat of workplace violence.

A grievance challenging Plaintiff's termination was filed on February 6, 2003, and Defendant NRLCA appealed and processed the grievance through the third step of the grievance procedure.  USPS denied the grievance at the first three stages of the grievance procedure. Although initially it did not intend to proceed to stage four of the grievance procedure, a binding arbitration, Defendant NRLCA did timely appeal the grievance to arbitration.  The grievance was neither withdrawn nor allowed to lapse, despite the conclusion made by attorneys representing the NRLCA that there was no reasonable likelihood of success in arbitration.  (See Decl. of Randy Anderson at ¶¶ 7, 8; Decl. of Michael J. Gan at ¶¶ 12-14.)  An arbitration hearing was conducted on September 24, 2004, and the arbitrator found just cause for Plaintiff's termination.

Before the arbitration was concluded, on May 6, 2004, Plaintiff filed this action against Magellan Health Services, the NRLCA, and John Potter, the Postmaster General of the USPS.  In its claim against the NRCLA and Defendant Potter, Plaintiff alleges that his USPS employment termination violated the collective bargaining agreement ("CBA") and that the union acted in bad faith and in an arbitrary in capricious manner in its representation of Plaintiff and pursuit of a grievance on his behalf (Count One).  In its claims against Magellan, Plaintiff alleges tortious interference with his relation with the USPS (Count Two), negligent misrepresentation (Count

Three), and invasion of privacy (Count Four).  Defendants all move for summary judgment on all counts.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Importantly, however, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H.R. Co. v.Conrail, 902 F.2d 174, 178 (2d Cir. 1990).

The moving party bears the burden of establishing that summary judgment is appropriate, Anderson, 477 U.S. at 225.  "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial.  It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, Corp. v. Catrett, 477 U.S. 317, 324 (1986)); see also Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("The moving party may obtain summary judgment by showing that little or no evidence may be found in

support of the nonmoving party's case.")  The non-moving party, in order to defeat summary judgment, must then come forward with "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson, 477 U.S. at 249; see also Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002).  In determining whether the non-moving party has met its burden, the Court draws "all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Rodriguez v. City of New York, 72 F.3d 1051, 1060 (2d Cir. 1995) (citations omitted). However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading." FED. R. CIV. P. 56(e).

## III.   DISCUSSION

### A.   Motion for Summary Judgment for Defendant Magellan

In its motion for summary judgment, Defendant Magellan argues that Plaintiff's claims against it have no merit because its conduct was compliant with Connecticut statutes and a common law duty to disclose statements made during mental health treatment when a risk of harm would otherwise go unaddressed.  All of Plaintiff's claims against Magellan–alleging tortious interference with his employment, invasion of privacy, and wrongful disclosure of confidential communications–arise from Mr. Ruck's disclosure to the USPS of Plaintiff's statements to him.  Although a dispute exists as to the accuracy of Ruck's disclosure to the USPS, the statements which Plaintiff concedes to have made to Mr. Ruck can reasonably be regarded to constitute a threat.  Plaintiff concedes that he indicated to Mr. Ruck that he had thoughts about hitting people.  A statement that creates a risk of harm by the expression or its

connotation, even if it is not accompanied by a statement of intent to carry out what is threatened, can reasonably be construed to constitute a threat.  See, e.g., 86 C.J.S. THREATS § 1 (2006) (a threat "is a communication relaying an intention to injure another's person or property which, taken in context, reasonably causes the listener to believe that the speaker will carry out his or her intention.").  On the evening of his telephone consultation with Plaintiff, it was reasonable for Mr. Ruck to understand Plaintiff's statements about hitting someone, about "not knowing what would happen," and about reading about him in the newspaper, taken together, to constitute a threat.

Plaintiff now offers several excuses to dispute the meaning and intent of his statements, but none of his ex post facto explanations belies the reasonable conclusion made by Mr. Ruck at the time that Plaintiff posed a risk of harm to himself or his co-workers.  Plaintiff claims that he made these statements in frustration and with no evident manifestation of intent to carry out any conduct adverse to anyone in the USPS.  He explains that, by saying he did not know what would happen the following day, he meant that he did not know what would happen to him, not that harm would be inflicted on others.  Regardless of Plaintiff's subjective intent, a reasonable listener could perceive his statements to pose a threat against himself or others.  Plaintiff also now attributes some of these statements to his brother, but he had not done so during his interview by the Postal Inspectors, nor had he denied making any of these statements to Ruck when interviewed for the Postal Inspectors' investigation, the Fitness For Duty Examination, or the Pre-Disciplinary Interview.  Plaintiff also suggests that Ruck made no effort to contact him as Ruck claims, but the record unquestionably reflects the fact that Plaintiff terminated the call. Plaintiff admits that he then shut off his cell phone, a fact which would preclude Ruck from

getting through to Plaintiff as Ruck claims was the case.  None of these explanations or justifications alters the reasonableness of Mr. Ruck's conclusion that the statements he heard Plaintiff make, followed by his inability to reach Plaintiff after his termination of the phone call, posed a risk of harm.

Given this context, Ruck made a reasonable decision to follow emergency protocol and disclose Plaintiff's statements during their telephone consultation to the USPS supervisors, and this disclosure did not violate any duty of confidentiality on the part of Defendant Magellan. Connecticut law permits, if not requires, Mr. Ruck to disclose Plaintiff's statements to USPS, and, as a clinical social worker, he could have been liable for failing to do so.  Connecticut statutory law provides that a social worker may disclose statements made to him when he "determines that there is a substantial risk of imminent physical injury by the person to himself or others."  CONN. GEN. STAT. § 52-146q(c)(2).  Because it was reasonable in this situation for Ruck to have concluded there was a substantial risk of imminent physical injury to Plaintiff's co-workers, Ruck was thus permitted to disclose information about his phone consultation with Plaintiff to the USPS.  Almonte v. New York Medical College, 851 F. Supp 34, 41 (D. Conn. 1994).[1]  Moreover, a mental health professional such as Mr. Ruck has a common law duty to control patients from committing acts of violence against third parties.  Jacoby v. Brinckerhoff, 250 Conn. 86, 96 (1999)  This duty arises when a mental health professional becomes aware that

---

[1]  Plaintiff correctly notes that Connecticut General Statute § 31-128i(b), which allows an employee of an EAP to disclose information about an individual's use of the EAP program to his employer where disclosure is necessary to prevent harm to the individual or others, was not in effect at the time in which the facts underlying this case transpired.  However, the fact that § 31-128i(b) was not enacted retroactively and did not create a privilege to Mr. Ruck in making the disclosure he did does not change the fact that Mr. Ruck was afforded such a privilege by another statute on the books, § 52-146a(c)(2).  Plaintiff does not address this statute in his briefs, but it is dispositive on this issue.

there is a substantial risk of violence to an identifiable victim or to a member of a class of identifiable victims, <u>Garamella v. New York Medical College</u>, 23 F. Supp. 2d 167, 175 (D. Conn. 1998) ("a psychiatrist has a duty to speak where harm to identifiable victims is a foreseeable consequence of his silence"), and mental health professionals may be liable for violence committed by their patients if they fail to fulfill their duty to warn. <u>Almonte</u>, 851 F. Supp. 2d at 40-41; <u>Davis v. Monsanto</u>, 627 F. Supp. 418, 419 (S.D. W. Va. 1986); RESTATEMENT (SECOND) OF TORTS § 315. Ruck therefore acted well within the confines of the law when disclosing to USPS information about his phone consultation with Plaintiff as a means of potentially neutralizing the legitimate risked posed by Plaintiff's statements. Because Mr. Ruck's disclosure of confidential information to the USPS was a privileged act under Connecticut law, Defendant Magellan is entitled to immunity from suit on Plaintiff's tort claims, which should accordingly be dismissed.

Even if Plaintiff's tort claims were not dismissed on grounds of Magellan's immunity, Defendant Magellan would be entitled to summary judgment as a matter of law for lack of a genuine issue of material facts relating to each of these claims. First, Defendant Magellan is entitled to summary judgment on Plaintiff's claim of a violation of his right to privacy claim because Plaintiff had no reasonable expectation that threats against USPS employees would remain confidential. Because Ruck was required by law to report the threatening statements made by Plaintiff, he cannot be liable for doing so. Moreover, Plaintiff has not alleged the essential elements of a breach of privacy claim. A claim arising from a right to privacy requires an unreasonable intrusion on another's seclusion, appropriation of another's name, unreasonable publicity of another's private life, or the public placement of another in a false light. <u>Goodrich v.</u>

Waterbury Republican-American, Inc., 188 Conn. 107, 127-28 (1982).  Plaintiff's claim appears to be based solely on an unreasonable intrusion on his seclusion.  A defendant is liable for a breach of privacy if he intentionally intrudes upon the solitude or seclusion of another or his private affairs or concerns and if the intrusion would be highly offensive to a reasonable person. RESTATEMENT (SECOND) OF TORTS § 652B (1977).  A reasonable person would deem the statements Plaintiff conceded to have made to be threatening; therefore, the same reasonable person would  not find it highly offensive that Ruck determined that the threatening statements were covered by Connecticut law requiring him to disclose the threats to the USPS.  Plaintiff's reliance on Connecticut General Statute § 31-128i, which prohibits an "employee assistance professional" from being required to disclose an employee's voluntary participation in an EAP sponsored by an employer, is misplaced.  The definition of employer in § 31-128i does not include the USPS, which is aan independent establishment of the executive branch of the U.S. government, 39 U.S.C. § 201, and not "an individual, corporation, partnership, or unincorporated partnership."  CONN. GEN. STAT. § 31-128a (2), (4).  Accordingly, Mr. Ruck's actions did not violate this statute, and Defendant Magellan is entitled to summary judgment on Plaintiff's breach of privacy claim.

Second, Plaintiff has failed to raise a genuine issue of triable fact regarding his claim that Magellan tortiously interfered with his employment contract.  The Complaint reflects only the fact that Ruck reported information from his conversation with Plaintiff to the USPS.  To prevail on a claim of tortious interference, Plaintiff must allege that he was in a business relationship, that Defendant intentionally interfered with that relationship, and that he suffered a loss as a result.  See Windover v. Sprague Technologies, 834 F. Supp 560, 568 (D. Conn. 1993); Harry A.

Finman & Son v. Conn. Truck & Trailor Serv. Co. 169 Conn. 407, 415, 363 A.2d 86 (1975).

Plaintiff must also show that the Defendant engaged in fraud, misrepresentation, intimidation or

molestation, or that the Defendant acted maliciously.  Dacourt Group, Inc. v. Babcock Indus.,

Inc., 747 F. Supp. 157, 161 (D. Conn. 1990).  Plaintiff has not alleged any motivation attributable

to Magellan that suggests that Ruck's report was in any way directed toward or contemplated to

adversely affect Plaintiff's employment.  There is also absolutely no evidence in the record

tending to show malice on the part of Defendant.  Absent an allegation of intended interference

with Plaintiff's employment, the claim fails.  See Blake v. Levy, 191 Conn. 257, 262 (1983);

Kakadelis v. De Fabritis, 191 Conn. 276, 279 (1983).  Although Plaintiff disputes some of what

Ruck quoted him as saying, the statements which he concedes to have made constitute a

perceived threat, as discussed above.  Plaintiff attempts to argue a difference between claims of

intentional interference and of tortious interference, suggesting that he claims the latter and is

accordingly excused from proving the intent element.  However, a party alleging tortious

interference must still demonstrate fraud, misrepresentation, intimidation, molestation, or other

malicious acts.  Daley v. Aetna Life & Cas. Co., 249 Conn. 766, 806 (1999) ("an action for

intentional interference with business relations... requires the plaintiff to plead and prove at least

some improper motive or improper means.") (internal citations omitted); Downes-Patterson

Corp. v. First Nat'l Supermarkets, Inc., 64 Conn. App. 417, 429 (Conn. App. Ct. 2001).  As

noted above, there is no allegation of unlawful intent, and so Defendant Magellan is entitled to

summary judgment on Plaintiff's tortious interference claim.

       Finally, Defendant Magellan is entitled to summary judgment on both of Plaintiff's

claims of negligent misrepresentation.  To prevail on a claim of negligent representation, Plaintiff

must show that Defendant made a misrepresentation and that the Plaintiff reasonably relied upon that misrepresentation.  McCann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc., 93 Conn. App. 486, 511 (2006).  Plaintiff claims, first, that Magellan negligently misrepresented the Plaintiff's statements to the USPS, and, second, that Magellan negligently misrepresented to Plaintiff that his call to EAP was confidential.  The first claim fails for the reason discussed above: Plaintiff admits making statements to Mr. Ruck which were reasonably perceived as a threat of workplace violence, even if such a threat was not intended.  Thus, even if Ruck's report to the USPS included statements not properly attributed to Plaintiff, the statements conceded by Plaintiff and reasonably perceived by Ruck to constitute a threat preclude a finding that Ruck's report to the USPS was false.  "Falsity is an essential element of a negligent misrepresentation claim," Daley, 249 Conn. at 792, and Plaintiff has failed to meet his burden of demonstrating that Mr. Ruck's representations to the USPS were in fact untrue.  See id. at 793. Furthermore, Plaintiff has failed to allege any reliance on Ruck's representations to the USPS. See Glazer v. Dress Barn, 274 Conn 33, 73 (2005).  Plaintiff has alleged no facts demonstrating that he relied on Ruck's representations, and as a matter of law his negligent misrepresentation claim must fail.

Plaintiff did not brief his second claim of negligent misrepresentation as to the confidentiality of his conversation with Ruck, which is therefore deemed abandoned.  Even if not abandoned, this claim would also fail because Plaintiff cannot be seen as entitled to confidentiality for his threatening statements in the face of Conn. Gen. Stat § 52-146q(c)(2). Plaintiff claims that Ruck's disclosure to the USPS betrayed Plaintiff's expectation of confidentiality; however, as discussed above, Ruck was not obliged to refrain from reporting

what Plaintiff admits saying.  Ruck was privileged, if not obliged, to do so, and Plaintiff had no

right to expect otherwise.  At the grievance arbitration, Plaintiff did not deny that Ruck disclosed

his duty to warn others of threatening statements as a condition of the confidentiality of their

conversation.  (Def. Magellan's Local R. 56(a)(1) Statement at ¶ 39.)  Moreover, Ruck's

representation of confidentiality at the outset of their conversation, as claimed by Plaintiff but

disputed by Ruck, was not untrue, and so Plaintiff has failed to show that Mr. Ruck made a

misrepresentation, an essential element of a claim for negligent misrepresentation.  Accordingly,

Defendant is entitled to summary judgment on both of Plaintiff's negligent misrepresentation

claims.

      For the foregoing reasons, Magellan's Motion for Summary Judgment is granted.

**B.  Motion for Summary Judgment for Defendant John Potter, Postmaster General**

      Defendant John Potter, Postmaster General, moves for summary judgment on the grounds

that Plaintiff has failed to plead a proper jurisdictional basis for his claims against the Postal

Service.  In his claim against Defendant Potter, Plaintiff invoked Section 301 of the Labor

Management Relations Act ("LRMA"), 29 U.S.C. § 185, alleging that the USPS "wrongfully

discharged" him and that the RCLA subsequently breached its duty of fair representation by

failing to fully represent him in the grievance process, both in violation of the applicable

collective bargaining agreement.  (See Amended Compl. ¶¶ a, 8-14.)  In a typical "hybrid" action

against an employer and a union, the employer's duty to honor the collective bargaining

agreement is governed by § 301 of the LRMA.  However, § 301 does not apply to the USPS

because it is not an "employer" within the meaning of 29 U.S.C. § 152(2), which states that the

term "employer" shall not include "the United States or any wholly owned Government

corporation." Id. See also Beckman v. U.S. Postal Serv., et al., 79 F. Supp. 2d 394, 400 n.7 (S.D.N.Y. 2000). Instead, federal courts have jurisdiction over claims against the Postal Service pursuant to the Postal Reorganization Act, 39 U.S.C. § 1208(b). Plaintiff belatedly invokes § 1280(b) in his memorandum of law opposing Defendant Potter's motion for summary judgment, but to no avail–this Court lacks jurisdiction over the USPS pursuant to the statutory basis relied upon by Plaintiff in his Amended Complaint. Plaintiff also wrongly named Mr. Potter as the defendant in this action because no claim for breach pursuant to § 1208(b) can lie against the Postmaster General. See Lettis v. U.S. Postal Serv., et al., 973 F. Supp. 352, 359-60 (E.D.N.Y. 1997) (holding that claims against individual USPS employees are not legally cognizable). In order for Plaintiff to state a "hybrid" claim for breach of a collective bargaining agreement, a defendant must be a signatory to the collective bargaining agreement. Id. The Postmaster General is not an individual signatory to the National Agreement between the USPS and the NRLCA, and so the Court does not have jurisdiction over Mr. Potter in this case. See Beckman, 79 F. Supp. 2d at 400 (citing Young v. U.S. Postal Serv., 907 F.2d 305 (2d Cir. 1990)). For these reasons, Plaintiff's claims against Defendant Potter are dismissed for lack of jurisdiction.

        Even if Plaintiff were to have properly named the USPS as a defendant and brought his claim pursuant to § 1208(b), summary judgment would enter for his employer on these claims for failure to raise a genuine issue as to whether there was a breach of the collective bargaining agreement. In a hybrid action claiming termination contrary to the collective bargaining agreement and the union's failure to represent Plaintiff requires that the latter claim is an indispensable predicate to the former claim. See Beckman, 79 F. Supp. 2d at 400; Flanigan v. Int'l Brotherhood of Teamsters, 942 F.2d 824, 828 (2d Cir. 1991) (quoting United Parcel Serv.

Inc. v. Mitchell, 451 U.S. 56, 62 (1981)); Acosta v. Potter, 410 F. Supp. 2d 298, 308 (S.D.N.Y. 2006) (citing Young, 907 F.2d at 307). In his opposition to Defendant Potter's motion, Plaintiff does not address the issue of whether union liability, which will be discussed below, is a prerequisite for employer liability, and this premise is therefore deemed conceded. Even if Plaintiff's claim against the union prevails, Plaintiff would still need to show that the USPS violated the collective bargaining agreement by terminating him for reasons which do not constitute "just cause" as required by the National Agreement. However, the record shows that Plaintiff refused direct orders from his supervisors on several occasions, contrary to USPS policies. The record also show that on December 5, 2002, he refused the requests of three of his supervisors to assist a new carrier in the delivery of her route, and he left the Post Office rather than following their orders and filing a written complaint as required by USPS policies. The Arbitration decision found that the weather conditions that day were not so unsafe as to justify Plaintiff's refusal of his supervisors' instructions. (See Def. Potter's Mot. for Summ. J., Ex. S at 12-15.) The record also shows that Plaintiff made statements to the EAP reasonably construed, as discussed above, to constitute threats in violation of USPS policies and regulations concerning threats of workplace violence. Such behavior qualifies as "insubordination, ... failure to perform work as requested, violation of the terms of this Agreement, [and] failure to observe safety rules and regulations," which constitutes "just cause" under the National Agreement. (See Def. Potter's Mot. for Summ. J., Ex. A, Article 16.3, Section1.) Accordingly, on the merits, and for the reasons discussed herein, Defendant Potter's motion for summary judgment is granted.

**C.     Motion for Summary Judgment for Defendant NRLCA**

Defendant NRLCA moves for summary judgment on two grounds, the first being that

because Plaintiff has not shown that his employer terminated his employment in violation of the collective bargaining agreement, he cannot prevail on his claim that NRLCA, the defendant union, failed in its duty to represent him fairly in the processing of his discharge grievance. To prevail against a union in a hybrid suit alleging a violation of its duty of fair representation, Plaintiff must prove not only that the union violated the duty but also that the employer violated the collective bargaining agreement in discharging the employee. Hines v. Anchor Motor Freight, Inc., et al., 424 U.S. 554, 570-71 (1976); DelCostello v. Int'l Bhd. of Teamsters, et al., 462 U.S. 151, 165 (1983); Teamsters v. Terry, 494 U.S. 558, 564 (1990); White v. White Rose Food, 237 F.3d 174, 178 (2d Cir. 2001). Plaintiff does not respond to this argument in its opposition memorandum, and on that basis the premise is deemed conceded. Because just cause was found to exist for Plaintiff's termination by the USPS and Plaintiff's employer is not liable, Defendant NRLCA cannot be liable as a matter of law. Defendant NRLCA's motion for summary judgment is therefore also properly granted.

        Defendant NRLCA also moves for summary judgment on the ground that Plaintiff has failed to show that the NRLCA violated its duty of fair representation. To establish a union's violation of its duty of fair representation where it is alleged to have unfairly represented an employee in arbitration, Plaintiff must prove that the union's conduct was "arbitrary, discriminatory, or in bad faith," Vaca v. Sipes, 386 U.S. 171, 190 (1967), and that it "seriously undermine[d] the integrity of the arbitral process." Hines, 424 U.S. at 567. See also Barr v. United Parcel Serv., Inc., 868 F.2d 36, 43 (2d Cir.), cert. denied, 493 U.S. 975 (1989). The Supreme Court has held that a union's actions are arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide

range of reasonableness' as to be irrational." <u>Air Line Pilots Ass'n, Int'l v. O'Neill</u>, 499 U.S. 65,

67 (1991) (internal citations omitted).  Within this 'wide range of reasonableness,' the union has

"room to make discretionary decisions and choices, even if those judgments are ultimately

wrong." <u>Marquez v. Screen Actors Guild, Inc.</u>, 525 U.S. 33, 45-46 (1998).

      The record does not show that the NRLCA violated its duty of fair representation.

Plaintiff's grievance was fully arbitrated.  The record shows that the attorneys provided by the

NRLCA to represent Plaintiff through the grievance process and at the arbitration thoroughly

prepared for the arbitration, presented testimony at the arbitration hearing, and fully argued the

NRLCA's position in defense of Plaintiff.  Plaintiff claims that the union did not fairly represent

him because it intended to withdraw his grievance from the fourth stage of the grievance process,

the arbitration stage.  This claim is unavailing because the grievance was ultimately not

withdrawn or allowed to lapse.  Plaintiff's claim of deficient representation at arbitration

primarily rests on the NRLCA's failure to call any witnesses.  Plaintiff notes that three fellow

RCAs–Jose Rosario, Dan Rodgers, and Robert Medina–could have testified about the weather

conditions on December 5, 2002, presumably to support Plaintiff's contention that it was unsafe

for him to have followed his supervisors' orders to resume mail delivery.  However, Plaintiff has

offered nothing but conclusory claims as to what these witnesses might have offered into

testimony; he has not submitted affidavits or depositions which would establish the existence of

a genuine issue of fact as to the value of these witnesses' testimony.  Mere allegations are not

enough to defeat Defendant NRLCA's summary judgment motion.  Fed. R. Civ. P. 56(e); <u>Regan</u>

<u>v. Soft Drink & Brewery Workers Union, Local 812</u>, No. 92-CIV-3375 (LLS), 1995 WL 146241,

at *4 (S.D.N.Y. March 31, 1995).  Although Plaintiff claims that Mr. Rosario would have

testified as to the severity of the weather, he claimed to have no recall about the weather when he was interviewed by NRCLA Attorney Dennis Clark.  Moreover, Mr. Rosario himself apparently did not regard the weather as an obstacle to the safe delivery of the mail since, after being similarly directed to resume the delivery of the mail at the same time that Plaintiff refused to do so, he complied and completed the mail delivery, as did three other carriers then instructed to assist in the mail delivery.  The NRLCA also appears to have made a reasonable decision to not call Vinny Mancini to testify about his mistreatment by his supervisors, which would have been irrelevant to Plaintiff's grievance.

Plaintiff also claims that the NRLCA should have called Plaintiff's brother Gabriel and should have raised the issue of EAP confidentiality to undermine allegations that Plaintiff had made threats in violation of workplace violence regulations.  As with regards to the other suggested witnesses, Plaintiff offers nothing other than his conclusory allegations into the record to substantiate what testimony his brother Gabriel might have offered at the arbitration hearing. Moreover, even if Gabriel had accepted responsibility for some of Plaintiff's statements to Mr. Ruck, this testimony would not have undermined the fact that Plaintiff had previously failed to disclaim those statements now attributed to Gabriel.  Given these facts, it was reasonable for the NRLCA to have decided that Gabriel would not be a helpful witness to Plaintiff.  The NRLCA also did not raise the issue of confidentiality of Plaintiff's conversation with Mr. Ruck because Attorney Clark had made a legal judgment that the Connecticut statute concerning EAP confidentiality, CONN. GEN. STAT. § 31-128i, did not apply to the USPS.  As discussed above, this statute does not apply to Plaintiff's case in the face of § 52-146q(c)(2), and the union cannot be faulted for failing to raise a statutory claim that is without merit.  Overall, the NRLCA was

-18-

entitled to exercise its judgment in choosing not to call any witnesses and in choosing to make only certain legal arguments, and Plaintiff makes no showing that the NRLCA's decision was motivated by discrimination or bad faith or was so unreasonable as to be irrational.  Plaintiff himself did testify at the arbitration hearing, and he does not contend that he was not afforded a full opportunity to present his knowledge and views at to the events of December 5, 2002.  Plaintiff has thus failed to show that the union's representation could be faulted for failure to raise meritorious arguments, see Ryan v. N.Y. Newspaper Printing Pressmen's Union No. 2, et al., 590 F.2d 451, 456-57 (2d Cir. 1979), or for omission of relevant testimony or arguments without a rational basis for doing so.  Cf. Cruz v. Local Union No. 3 of the IBEW, 34 F.3d 1148, 1153-54 (2d Cir. 1994).  He has thus failed to show that the NRLCA acted in such a way that was arbitrary, discriminatory, in bad faith, or which undermined the arbitral process.  Barton v. City of Bristol, 294 F. Supp. 2d 184, 202 (D. Conn. 2003).  Accordingly, Defendant NRLCA is entitled to summary judgment as a matter of law.

## IV.    CONCLUSION

For the forgoing reasons, Defendant Magellan's motion for summary judgment [Doc. No. 120] is **granted.**  Because the Court was able to resolve this motion on the papers, Defendant Magellan's motion for a hearing [Doc. No. 124] is **denied.**  Defendant Potter's motion for summary judgment [Doc. No. 115] is **granted.**  Defendant NRLCA's motion for summary judgment [Doc. No. 104] is **granted.**  Judgment shall enter accordingly, and the Clerk shall close the case.

SO ORDERED.

Dated at New Haven, Connecticut this  3rd  day of January, 2007.

                                                      /s/
_____PETER C. DORSEY
                                             UNITED STATES DISTRICT JUDGE